# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BETHANNE THOMAS, individually and on behalf of the ESTATE OF ROBERT THOMAS SILVA, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 15 C 11183 ) ) |
| CITY OF BLUE ISLAND, a municipal corporation, MICHAEL CORNELL, individually and in his official capacity as an employee of the City of Blue Island, and KEVIN SISK, individually, and in his official capacity as an employee of the City of Blue Island, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On December 11, 2015, Plaintiff BethAnne Thomas, individually and on behalf of the Estate of Robert Thomas Silva, brought the present seven-count Complaint against Defendants City of Blue Island ("Blue Island") and Blue Island Police Officers Michael Cornell and Kevin Sisk alleging constitutional violations pursuant to 42 U.S.C. § 1983 and supplemental state law claims under 28 U.S.C. § 1367(a). Before the Court is Defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court denies Defendants' motion.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be

granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). The relevant question at the motion to dismiss stage is not whether the plaintiff will ultimately prevail on the merits, but whether the complaint is sufficient to cross the federal pleading threshold. *See Skinner v. Switzer,* 562 U.S. 521, 529-30, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). In determining the sufficiently of a complaint under the plausibility standard, courts "accept the complaint's well-pleaded facts as true and construe the allegations in the light most favorable to the plaintiff." *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014). Also, "although a plaintiff need not anticipate or overcome affirmative defenses such as those based on the statute of limitations, if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground." *O'Gorman v. City of Chicago,* 777 F.3d 885, 889 (7th Cir. 2015).

**BACKGROUND**

Plaintiff is the mother of the decedent, Robbie Silva, and the Administrator of Silva's Estate. (R. 1, Compl. ¶ 3.) On December 1, 2005, eleven-year-old Silva was killed by a hit-and-run driver while sledding with friends in Blue Island. (*Id*. ¶ 9.) Immediately thereafter, the Blue

Island Police Department ("BIPD") began investigating the matter. (*Id.*) At that time, Defendant Cornell was a detective sergeant and Defendant Sisk held the rank of corporal. (*Id.* ¶ 10.) Defendants' superiors assigned Defendant Officers Sisk and Cornell to the Silva investigation. (*Id.*)

Shortly after Silva's death, BIPD Officer Marty Robitz informed Plaintiff that the BIPD had a good lead involving a white pickup truck with a male driver. (*Id.*) In April or May 2006, another police officer informed Plaintiff that a person-of-interest had been identified and that the person-of-interest's girlfriend was a potential witness to the crime. (*Id.*) Plaintiff alleges that the girlfriend was also the former sister-in-law of an individual who held significant political connections in Blue Island. (*Id.*) According to Plaintiff, this politically connected individual owned a towing company that held the contract for Blue Island police tows and also had personal ties to Defendant Cornell. (*Id.*)

At that time, police conducted a polygraph interview of the girlfriend during which she provided an alibi for the person-of-interest. (*Id.* ¶ 11.) The police officer who conducted the polygraph concluded that the results were inconclusive. (*Id.*) Plaintiff alleges that despite this result, Defendant Cornell authored and signed a subsequent report regarding the interview stating that the girlfriend "passed the polygraph" and that "she is telling the truth." (*Id.*) Also, Plaintiff alleges that due to Defendant Cornell's allegedly false report that the girlfriend had passed the polygraph, the BIPD did not pursue this lead. (*Id.*) In addition, Plaintiff contends that Defendant Cornell told her that the girlfriend had passed the polygraph. (*Id.* ¶ 12.) Plaintiff maintains that in the following months and years, the BIPD inexplicably abandoned the investigation into the hit-and-run and the case went cold. (*Id.* ¶ 13.)

3

Furthermore, Plaintiff alleges that she did everything should could do to spur the BIPD to continue their investigation into her son's death.  (*Id*. ¶ 14.)  Plaintiff, for example, attended Blue Island city council meetings where she would ask city officials for help.  (*Id*.)  Also, Plaintiff asserts that she sent complaint letters to the Chief of Police, questioned city officials whenever she saw them, and made regular monthly phone calls to the BIPD inquiring about the status of the investigation into her son's death.  (*Id*.)

In March 2009, Plaintiff asked BIPD Detective Ismael Haro ("Detective Haro") to take a fresh look into her son's case, and Detective Haro agreed to do so.  (*Id*. ¶ 15.)  Plaintiff contends that when Detective Haro began his review, he was unable to locate the investigation file.  (*Id*.)  In addition, Plaintiff alleges that the archives of the police reports related to the case were missing.  (*Id*.)  When Detective Haro confronted Defendant Cornell, who was the lead investigator on the case, Defendant Cornell admitted that he had the file in his personal possession.  (*Id*. ¶¶ 15, 16.)  According to Plaintiff, instead of turning over the file, Defendant Cornell demanded to know why Detective Haro wanted to see it.  (*Id*. ¶ 16.)  Plaintiff alleges that when Detective Haro explained that Plaintiff had asked him to review the case, Defendant Cornell stated "That woman needs to get over it.  Her son is dead and the offender in the case has likely fled to Mexico."  (*Id*.)  Nevertheless, Detective Haro persisted in his request for the investigative file, but Defendant Cornell never produced it.  (*Id*. ¶ 17.)  Instead, Detective Haro obtained the file from another BIPD officer.  (*Id*.)

Plaintiff further states that upon reviewing the file, Detective Haro realized that the investigation file had not been properly maintained in accordance with applicable BIPD investigative standards.  (*Id*. ¶ 18.)  Detective Haro discovered that original reports were missing

4

from the file, reports generated during the investigation had not been approved or submitted to the records department for archival, other reports were deficient and inadequate, leads had not been exhausted, no "lead sheet" had been created, and there was no management system for the case. (*Id*.) Moreover, Plaintiff alleges that the investigative file did not contain any information related to the sole person-of-interest who the BIPD had previously identified. (*Id*.) According to Plaintiff, Defendant Cornell eventually admitted to Detective Haro that he had not conducted an investigation because personal issues had distracted him from doing his job. (*Id*. ¶ 19.)

In March 2012, Detective Haro informed then Blue Island Chief of Police Doug Hoglund about the problems regarding the Silva investigation file. (*Id*. ¶ 20.) Plaintiff alleges that Chief Hoglund was alarmed to learn of the lack of investigation by Defendant Officers. (*Id*.) Further, Plaintiff contends that as a result of the deficiencies in the Silva file, Chief Hoglund directed Detective Haro to confidentially reinvestigate the case and to notify him when it was ready to be formally reopened. (*Id*.) While reinvestigating the case, Detective Haro discovered numerous original reports were missing from the Silva case file, one of which was the original polygraph report of the person-of-interest's girlfriend. (*Id*. ¶ 21.) As discussed, contrary to Defendant Cornell's report, the original report stated that the polygraph was inconclusive. (*Id*.)

Detective Haro then reported his findings to Chief Hoglund, including his belief that Defendant Cornell had falsified the report regarding the girlfriend's polygraph results and that Defendant Cornell had deliberately failed to properly investigate the case. (*Id*. ¶ 22.) At some point in 2012, Chief Hoglund informed Plaintiff that the person-of-interest's girlfriend was given a second polygraph interview and had failed it. (*Id*. ¶ 23.) Based upon the information provided to him by Detective Haro, Chief Hoglund decided to formally reopen the Silva case in April

5

2012, at which time Chief Hoglund personally contacted the head of the South Suburban Major Crime Task Force asking them to get involved in the case. (*Id.* ¶ 24.)

Plaintiff alleges that at approximately 2:00 a.m. on the morning that the BIPD was to officially re-open the Silva investigation, an individual saw a truck from the tow company outside of Defendant Cornell's residence. (*Id.* ¶ 25.) Detective Haro also learned that Defendant Cornell had been speaking with the owner of the tow company about the reactivation of the case and that Defendant Cornell had also spoken to potential witnesses. (*Id.* ¶ 26.) In addition, Plaintiff alleges that as Detective Haro moved forward with the investigation, the owner of the tow company complained to the BIPD about the investigation. (*Id.* ¶ 25.)

In May 2012, Chief Hoglund resigned from his position as Blue Island's Chief of Police and Phil Contreras was appointed Chief. (*Id.* ¶ 27.) Detective Haro then met with Chief Contreras about the Silva case and informed him of the deficiencies in the file, including the allegedly falsified police report authored by Defendant Cornell. (*Id.*) Plaintiff alleges that Chief Contreras' response to Detective Haro was to "let sleeping dogs lie." (*Id.*) Meanwhile, Plaintiff met with the newly-appointed Chief Contreras to complain about the investigation's deficiencies, and, according to Plaintiff, Chief Contreras readily admitted that there were "problems with the investigation." (*Id.* ¶ 28.) In a subsequent letter to Plaintiff, Chief Contreras admitted that there were problems with the investigation, but emphasized that it was former Chief Hoglund who oversaw the investigation into her son's death and not himself. (*Id.*)

In September 2012, Defendant Cornell removed Detective Haro from the detective division and assigned him to the midnight shift, which made it difficult for Detective Haro to continue his work on the Silva investigation. (*Id.* ¶ 29.) In May 2013, Chief Contreras retired as

Chief of Police and, in August 2013, Defendant Cornell became acting chief. (*Id*. ¶ 30.) Plaintiff alleges that in November 2013 Defendant Cornell appointed Defendant Sisk to the new position of "commander," which was to be an administrative and management position between the ranks of deputy chief and patrol sergeant. (*Id*.) Plaintiff alleges that following their promotions, Defendants Cornell and Sisk began initiating various disciplinary proceedings against Detective Haro in an attempt to remove him from the BIPD. (*Id*. ¶ 31.) On December 17, 2014, Detective Haro filed a whistleblower lawsuit in Cook County Circuit Court against Defendants Cornell and Sisk alleging that they intentionally abandoned the Silva investigation and then retaliated against Detective Haro for his efforts to reopen the case in order to cover up the hit-and-run that left Silva dead. (*Id*.) Moreover, Plaintiff contends that she first learned of Defendants Officers' misconduct and the alleged active cover-up and concealment involving the investigation into her son's death when Detective Haro filed his whistleblower lawsuit in December 2014. (*Id*. ¶ 32.)

## ANALYSIS

### I. Deprivation of the Right of Access to the Courts – Count I

Defendants first move to dismiss Count I of the Complaint in which Plaintiff alleges a constitutional claim based on the deprivation of her right of access to the courts. The First and Fourteenth Amendments to the Constitution protect an individual's right to pursue legal redress for claims that have a reasonable basis in law and fact. *See Christopher v. Harbury,* 536 U.S. 403, 414-15, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002); *Rossi v. City of Chicago,* 790 F.3d 729, 734 (7th Cir. 2015); *Vasquez v. Hernandez,* 60 F.3d 325, 328 (7th Cir. 1995). "A corollary of this right is that efforts by state actors to impede an individual's access to courts or

administrative agencies may provide the basis for a constitutional claim under 42 U.S.C. § 1983." *Vasquez,* 60 F.3d at 328; *see also Rossi,* 790 F.3d at 734 ("Interference with the right of court access by state agents who intentionally conceal the true facts about a crime may be actionable as a deprivation of constitutional rights under § 1983."). "[W]hen police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged." *Vasquez,* 60 F.3d at 328 (citing *Bell v. City of Milwaukee,* 746 F.2d 1205, 1261 (7th Cir. 1984)). "Relief for the denial of access to the courts is intended to remedy rights denied in a separate case due to the impediment," the "'very point of recognizing any access claim is to provide effective vindication for a separate and distinct right to seek judicial relief for some wrong.'" *In re Maxy,* 674 F.3d 658, 661 (7th Cir. 2012) (citation omitted).

In Count I of her Complaint, Plaintiff alleges that Defendant Officers' active concealment and cover-up of the information regarding the December 2005 hit-and-run crime that resulted in her son's death prevented her from discovering the identity of the driver so she could bring a personal injury and wrongful death lawsuit against the driver within Illinois' two year statute of limitations. *See* 735 ILCS 5/13-202; 740 ILCS 180/2. She also maintains that she did not learn of Defendants Sisk's and Cornell's active and ongoing efforts to cover-up the perpetrator's identity until Detective Haro filed his whistleblower action on December 17, 2014.

On the other hand, Defendant Officers Sisk and Cornell argue that Plaintiff knew certain facts about the hit-and-run prior to December 2014, and thus her right to access to courts claim is untimely under the two year limitations period for constitutional claims brought in Illinois. *See Turley v. Rednour,* 729 F.3d 645, 651 (7th Cir. 2013). Defendant Officers specifically point to

8

Plaintiff's allegations that she knew that the BIPD had identified a person-of-interest in 2006 and that the person-of-interest's girlfriend failed her second polygraph test in 2012. Defendant Officers further highlight Plaintiff's allegations that Chief of Police Contreras told her there were problems with the investigation into her son's death in 2012. Viewing these allegations and all reasonable inferences in Plaintiff's favor, these facts, alone, do not amount to an implicit concession by Plaintiff that she was aware of Defendants' alleged ongoing cover-up of the perpetrator's identity prior to December 2014, as Defendants argue. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.,* 782 F.3d 922, 928 (7th Cir. 2015).

Defendants also assert that Plaintiff should have uncovered the identity of the driver on her own by asking for police reports. *See Cannon v. Burge,* 752 F.3d 1079, 1099 (7th Cir. 2014). At this procedural posture, however, the Court must accept Plaintiff's well-pleaded factual allegations as true and all reasonable inferences in her favor. *See Thulin*, 771 F.3d at 997. In her Complaint, Plaintiff unequivocally alleges that she did everything should could to spur the BIPD into continuing the investigation into her son's death, including attending city council meetings, writing complaint letters, and calling the BIPD. She further alleges that Defendants falsified and concealed the information, thus obtaining the police reports would not necessarily disclose the identity of the driver. Therefore, Defendants' argument that Plaintiff should have discovered the hit-and-run driver on her own is misplaced.

Accordingly, at this juncture, Plaintiff's allegations include enough factual details to present a story that "holds together" in relation to her claim that Defendants Sisk and Cornell actively concealed information about the December 2005 hit-and-run that killed her son – including the identity of the perpetrator – so that she could not pursue legal redress against the

9

driver for the wrongful death and personal injury damages she suffered due to her son's death. *See Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.,* 786 F.3d 510, 526 (7th Cir. 2015); *see also Iqbal,* 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). The Court therefore denies Defendants' motion to dismiss Count I.

## II.     Monell Claim against Blue Island – Count II

Next, Defendants argue that Plaintiff's claim under *Monell v. Dept. of Soc. Servs. of the City of N.Y.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), must necessarily fail because Plaintiff has not properly alleged her First and Fourteenth Amendment access to courts claim. Because Plaintiff has sufficiently alleged her access to courts claim under *Iqbal* and *Twombly*, the Court denies Defendants' motion to dismiss Count II of the Complaint.

## III.    Constitutional Conspiracy Claim – Count III

Similarly, Defendants contend that because there is no underlying constitutional claim, Plaintiff's § 1983 conspiracy claim as alleged in Count III must fail. *See Sow v. Fortville Police Dept.,* 636 F.3d 293, 305 (7th Cir. 2011) ("absence of any underlying violation of Plaintiff's rights precludes the possibility of Plaintiff succeeding on a conspiracy claim"); *Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008) ("[C]onspiracy is not an independent basis of liability in § 1983 actions."). Because Plaintiff has sufficiently alleged her First and Fourteenth Amendment deprivation of access to courts claim, this argument is without merit.

Defendants also argue that Plaintiff's § 1983 conspiracy claim runs afoul of the intra-corporate conspiracy doctrine. In general, the intra-corporate conspiracy doctrine precludes §

10

1985(2) conspiracy claims against members of the same entity acting within the scope of their authority. *See Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 632-33 (7th Cir. 1999); *Wright v. Illinois Dept. of Children & Family Servs.,* 40 F.3d 1492, 1508 (7th Cir. 1994). Although the Seventh Circuit has not addressed the application of the intra-corporate conspiracy doctrine in the context of § 1983 conspiracy claims, in cases involving police misconduct, courts in this district have concluded that the doctrine is inapplicable if the alleged misconduct is "not the product of routine police department decision-making." *Salaita v. Kennedy,* 118 F. Supp. 3d 1068, 1085 (N.D. Ill. 2015) (citation omitted). Examining Plaintiff's well-pleaded allegations as true, she has alleged that Defendant Officers' actions in actively concealing the investigation into her son's death – such as falsifying police reports – were far from routine police practice. *See id.* Furthermore, an exception to the intra-corporate conspiracy doctrine includes situations where the alleged conspiracy is part of some broader unlawful pattern that permeates the ranks of the organization's employees. *See Hartman v. Board of Trs. of Cmty. Coll. Dist. No. 508,* 4 F.3d 465, 471 (7th Cir. 1993). In her Complaint, Plaintiff also alleges that Blue Island has a de facto pattern and practice of not properly investigating, charging, or prosecuting friends of the Blue Island Police Department. Under these allegations, the intra-corporate conspiracy doctrine does not apply.

In addition, Defendants contend that Plaintiff has omitted the "why, what, when, where, why, and how" regarding the conspiracy – suggesting that Plaintiff must meet Rule 9(b)'s heightened pleading requirements for fraud or mistake. *See United States v. Sanford-Brown, Ltd.,* 788 F.3d 696, 704-05 (7th Cir. 2015). Despite Defendants' argument to the contrary, Plaintiff need not allege § 1983 conspiracy claims with particularity under Rule 9(b) because

11

they are not grounded in fraud, although a plaintiff must set forth the parties, the purpose, and the approximate date of the alleged conspiracy. *See Cooney v. Rossiter,* 583 F.3d 967, 970 (7th Cir. 2009); *Loubser v. Thacker,* 440 F.3d 439, 443 (7th Cir. 2006). Plaintiff has met this standard.

In particular, Plaintiff describes the personal and political connections between the towing company owner and Defendant Officer Cornell, as well as the personal connections between the towing company owner and a witness of the hit-and-run – the girlfriend of the man suspected of being the hit-and-run driver. Plaintiff further alleges that sometime in 2006 Defendant Cornell falsified a police report pertaining to the results of the girlfriend's polygraph examination and that Defendants Sisk and Cornell tried to conceal the identity of the hit-and-run driver so that the driver could avoid criminal charges. Plaintiff also alleges that Defendant Cornell contacted the towing company owner on the morning that the hit-and-run investigation formally reopened in 2012. Further, Plaintiff maintains that the owner of the towing company complained to the Blue Island Police Department about the reactivation of the investigation. Construing Plaintiff's allegations and all reasonable inferences in her favor, she has sufficiently alleged that Defendant Cornell, Defendant Sisk, and the owner of the towing company, who were personally and politically connected, had an ongoing conspiracy – starting in approximately 2006 until Officer Haro filed his whistleblower lawsuit in 2014 – to cover-up the identity of the hit-and-run driver so that the driver would avoid criminal charges. Under the circumstances, Plaintiff has sufficiently alleged a plausible § 1983 conspiracy claim. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."). The Court therefore denies Defendants' motion to dismiss Count III of the Complaint.

## IV. Intentional Infliction of Emotional Distress – Count IV

Defendants also move to dismiss Count IV of the Complaint in which Plaintiff alleges that Defendants' conduct in failing to properly investigate the criminal death of her child, falsifying police reports, concealing the hit-and-run crime, and retaliating against a fellow police officer in an effort to conceal the perpetrator of the hit-and-run crime amounts to intentional infliction of emotional distress ("IIED"). Plaintiff alleges that as a result of Defendants' misconduct, she experienced, and continues to experience, severe emotional distress, that Defendants' actions contributed to Plaintiff losing her job of 18 years, and that the alleged misconduct has also caused strained and severed family relationships. Plaintiff further alleges that she continues to experience difficulty sleeping as a result of Defendants' misconduct.

"To recover on a claim for IIED, Illinois law requires a plaintiff to prove: (1) that the conduct was extreme and outrageous, (2) that the actor intended that his conduct inflict severe emotional distress or knew that there was a high probability that his conduct would inflict such distress, and, (3) that the conduct in fact caused severe emotional distress." *Bailey v. City of Chicago,* 779 F.3d 689, 696 (7th Cir. 2015). The tort of IIED does not extend to "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Boston v. U.S. Steel Corp.,* ___ F.3d ___, 2016 WL 851552, at *9 (7th Cir. Mar. 4, 2016) (citation omitted). Instead, for "conduct to be extreme and outrageous it must go 'beyond all bounds of decency' and be 'considered intolerable in a civilized community.'" *Fox v. Hayes,* 600 F.3d 819, 842 (7th Cir. 2010) (citation omitted). The "extreme and outrageous character of a defendant's conduct may

13

arise, not so much from what he says or does, but from the defendant's improper use of a position of power which gives him the ability to adversely affect the plaintiff's interests." *Id.* (citation omitted).

First, Defendants argue that Plaintiff has failed to sufficiently allege that their conduct was extreme and outrageous because the mere fact that they may have violated the law does not constitute outrageous conduct. *See Salaita,* 118 F.Supp.3d at 1088. Not only has Plaintiff alleged more than just mere violations of the law, but the *Salaita* decision involved an employment claim, as the district court recognized when it stated that "[c]ourts are cautious in their treatment of emotional distress claims in the employment domain, because if 'discipline, job transfers, or even termination could form the basis of an action for emotional distress, virtually every employee would have a cause of action'" *Id.* at 1087-88. Defendants also assert that it is not extreme and outrageous to file a false police report. *See Rusinowski v. Village of Hillside,* 19 F. Supp. 3d 798, 815 (N.D. Ill. 2014). In *Rusinowski,* the district court recognized that the plaintiff's IIED claim was based on more than the false police report when concluding that the defendant's conduct was extreme and outrageous. *See id.*

Here, Plaintiff specifically alleges that the extreme and outrageous conduct "included deliberately failing to properly investigate the violent, criminal death of an eleven year old child in an attempt to cover up a hit and run crime, and retaliating against a police officer in an effort to ensure that the investigation did not succeed and to deprive Plaintiff of justice." (Compl. ¶ 54.) Moreover, viewing Plaintiff's allegations as a whole, she has sufficiently alleged that Defendants Sisk and Cornell abused their authority as police officers by concealing the identity of the driver who killed her son because the driver had personal or political connections in Blue

14

Island.  Under the facts and circumstances alleged, a reasonable person, hearing these facts, would be outraged that the police purposely failed to investigate a crime against a child resulting in the child's death in order to protect a political or personal connection or friend.  *See Duffy v. Orlan Brook Condo. Owners' Ass'n,* 981 N.E.2d 1069, 1079 (1st Dist. 2012) ("extreme and outrageous behavior requires conduct that goes beyond all possible bounds of decency, such that a reasonable person would hear the facts and be compelled to feelings of resentment and outrage).  The Court therefore denies Defendants' motion in this respect.

Second, Defendants argue that Plaintiff's IIED claim is untimely under the one year limitations period pursuant to Illinois Local Government and Governmental Employees Tort Immunity Act, 745 ILCS 10/8–1.  Plaintiff, however, filed the present lawsuit within a year after she first learned of Defendants Officers' misconduct in the alleged active cover-up and concealment involving the investigation into her son's death when Detective Haro filed his whistleblower lawsuit on December 17, 2014.  Nonetheless, Plaintiff also points to the statutory tolling doctrine of fraudulent concealment pursuant to 735 ILCS 5/13-215, which states in its entirety:

> If a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards.

"The concealment contemplated by section 13–215 must consist of affirmative acts or representations calculated to lull or induce a claimant into delaying filing of his or her claim, or to prevent a claimant from discovering a claim." *Orlak v. Loyola Univ. Health Sys.,* 228 Ill. 2d 1, 18, 885 N.E.2d 999, 885 N.E.2d 999 (2007).

Viewing the facts and reasonable inferences in Plaintiff's favor, she has sufficiently alleged that Defendant Officers' affirmative acts and representations prevented her from discovering her IIED claim. At this juncture, no more is needed, especially because Plaintiff need not anticipate affirmative defenses at this procedural posture. *See O'Gorman,* 777 F.3d at 889. "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman Health Ctr.,* 782 F.3d at 928. As such, Defendants may ultimately prevail on their statute of limitations affirmative defense later in these proceedings, but not on the facts as alleged. The Court therefore denies Defendants' motion to dismiss Plaintiff's IIED claim as alleged in Count IV of the Complaint.[1]

## V. State Law Conspiracy to Inflict Severe Emotional Distress – Count V

In their motion to dismiss, Defendants maintain that Plaintiff's Illinois civil conspiracy claim based on her severe emotional distress fails because she did not sufficiently allege her § 1983 conspiracy or IIED claims under the federal pleading standards. As discussed, Plaintiff has sufficiently alleged these claims, therefore, Defendants' argument is without merit. The Court denies Defendants' motion to dismiss Count V.

## VI. Respondeat Superior and Indemnification – Counts VI and VII

Last, Defendants contend that because the underlying substantive claims are unsupported, the derivative claims of respondeat superior and indemnification are untenable. As discussed,

---

[1] The Court reminds the parties that arguments made for the first time in a reply brief are waived. *See United States v. Lacy,* 813 F.3d 654, 658 (7th Cir. 2016).

Plaintiff has sufficiently alleged the underlying substantive claims surviving Defendants' Rule 12(b)(6) motion to dismiss. Thus, the Court denies Defendants' motion to dismiss Counts VI and VII.

## CONCLUSION

For these reasons, the Court denies Defendants' Rule 12(b)(6) motion to dismiss.

**Dated:** April 4, 2016

                                            **ENTERED**

                                            _____
                                            **AMY J. ST. EVE**
                                            **United States District Court Judge**