IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BETH THOMAS, individually and on behalf of the ESTATE OF ROBERT THOMAS SILVA,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY OF BLUE ISLAND, et al.,<br><br>    Defendants. | Case No. 15 C 11183 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

  On December 11, 2015, Plaintiff Beth Thomas, individually and on behalf of the Estate of Robert Thomas Silva, brought this lawsuit against Defendants City of Blue Island, Illinois ("Blue Island") and Blue Island Police Officers Michael Cornell and Kevin Sisk alleging constitutional violations under 42 U.S.C. § 1983 and state law claims pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). Before the Court are Defendants' motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants in part and denies in part Defendants' summary judgment motions. The remaining claims in this lawsuit include Plaintiff's state law intentional infliction of emotional distress claim against Defendant Cornell as alleged in Count IV and Plaintiff's respondeat superior and indemnification claims against Blue Island in Counts VI and VII.[1]

---

[1] Plaintiff does not make any arguments concerning Defendant Kevin Sisk in her summary judgment filings, and thus she has waived her claims against him. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) (failing to respond to defendants' arguments amounts to waiver of claims); *Steen v. Myers,* 486 F.3d 1017, 1020-21 (7th Cir. 2007) (absence of discussion in briefs amounts to abandonment of claim).

**BACKGROUND**

Plaintiff Beth Thomas is the mother of Robert Silva ("Robby"), an 11-year-old boy, who was killed by a hit-and-run driver while sledding with friends in Blue Island on December 1, 2005. (R. 75, Defs.' Stmt. Facts ¶ 2.) Defendant Michael Cornell ("Cornell") has been the Acting Chief of Police for the Blue Island Police Department ("BIPD") since May 2013. (*Id*. ¶ 4.) At the time of the hit-and-run until July 15, 2008, Defendant Cornell was a Detective Sergeant for the BIPD. (*Id*. ¶ 5.) The BIPD began investigating the hit-and-run on the day of the accident, and as the Detective Sergeant, Defendant Cornell was in charge of overseeing the entire hit-and-run investigation. (*Id*. ¶ 10; R. 78, Pl.'s Stmt. Facts ¶ 1.) Doug Hoglund was the BIPD's Chief of Police at the time of the hit-and-run accident until May 2012. (*Id*. ¶ 8.)

In April 2007, Plaintiff learned that Vince Kolodziej ("Kolodziej") may have been involved in her son's death. (Defs.' Stmt. Facts ¶ 12; R. 75-2, Pl.'s 5/7/12 Letter to Chief Hogund, at 2.) In particular, Plaintiff heard from one of Kolodziej's family members that Kolodziej was possibly involved in the hit-and-run accident and was living in Florida. (*Id*. ¶¶ 13, 14.) During the Silva investigation, Plaintiff gave Defendant Cornell "information regarding Kolodziej and individuals he may have had contact with, or been in contact with, as well as information regarding Jennifer Riley," who was Koldoziej's girlfriend. (*Id*. ¶¶ 15, 18.)

On March 27, 2007, Defendant Cornell and Detective Ismael Haro went to Riley's house to interview her about Kolodziej's whereabouts at the time of the hit-and-run accident. (*Id*. ¶ 18.) Defendant Cornell came away from the interview with concerns about Riley's truthfulness. (*Id*.) Two days after interviewing Riley, Defendant Cornell requested that she come down to the police station to take a polygraph test. (*Id*. ¶ 19.) A Cook County Sheriff's Department Detective, Richard Williams, conducted the polygraph examination of Riley. (*Id*.) Defendant

Cornell testified that based on a conversation he had with Williams, he believed that Riley had told the truth during her polygraph test. (*Id.* ¶ 22.) On March 31, 2007, Defendant Cornell drafted a report stating that Riley had passed the polygraph test. (*Id.* ¶ 23; Pl.'s Stmt. Facts ¶ 18.) Defendant Cornell also told Chief Hoglund that Riley passed the polygraph examination. (Pl.'s Stmt. Facts ¶ 20.) Nonetheless, on April 2, 2007, Williams issued a letter containing his formal conclusion stating that Riley's polygraph examination was inconclusive. (Defs.' Stmt. Facts ¶ 24; Pl.'s Stmt. Facts ¶ 19.) Also, at some point during the Silva investigation, Defendant Cornell approached Plaintiff telling her that her son's death was "just an accident" and that she needed to move on. (Pl.'s Stmt. Facts ¶ 40.)

After the 2007 Riley polygraph examination, the BIPD did not exclude Kolodziej as a suspect, and continued investigating him, including interviewing members of Kolodziej's family and continuing a dialogue with the Cook County State's Attorney's Office about charging Kolodziej with a crime. (Defs.' Stmt. Facts ¶ 29.) That being said, Chief Hoglund testified that the fact that the BIPD thought Riley passed the polygraph examination could have set the investigation on a different course because it might indicate that Kolodziej was not involved. (Pl.'s Stmt. Facts ¶ 21.) Chief Hoglund also testified that after he reviewed the Silva investigation file in 2012, he concluded that Defendant Cornell had falsified and misrepresented Riley's polygraph findings. (*Id.* ¶ 24.)

In the interim, on July 15, 2008, Defendant Cornell's direct involvement in the Silva investigation ended because he left the Detective Division to become the BIPD's Deputy Chief. (Defs.' Stmt. Facts ¶ 31; Pl.'s Stmt. Facts ¶ 4.) Thereafter, Detective Haro took over as head of the Detective Division reporting directly to Chief Hoglund. (*Id.* ¶ 32.) In March 2009, Plaintiff contacted Detective Haro to ask him to take a fresh look at her son's case, and after talking to

3

Detective Haro, Plaintiff knew that Kolodziej was still a suspect. (*Id*. ¶¶ 33, 34.) In October 2009, Plaintiff met with BIPD Officers Bernadine Rzab and Jeff Werniak, at which time they talked about Kolodziej as a person of interest. (*Id*. ¶ 35.) While Officer Rzab was investigating the Silva hit-and-run, she discovered that although the BIPD policy is to keep investigation files in the detective division, Defendant Cornell had kept the Silva investigation file in his desk drawer until 2009 when Officer Rzab asked for it. (Pl.'s Stmt. Facts ¶¶ 9, 12-15.) Thereafter, Officer Rzab corrected Defendant Cornell's March 2007 polygraph report by indicating that Riley's polygraph examination was inconclusive. (Defs.' Stmt. Facts ¶ 26.)

In 2012, due to Detective Haro's concerns about the deficiencies in the Silva investigation and the inconsistencies in the 2007 Riley polygraph reports, he requested that the South Suburban Major Crimes Task Force ("Task Force") assist in the Silva investigation, after which Chief of Police Hoglund authorized the Task Force's involvement. (*Id*. ¶¶ 38, 39.) The Task Force investigators located Kolodziej in Florida, and traveled to Texas and Florida to interview witnesses and Kolodziej. (*Id*. ¶ 43.) In Florida, the Task Force took Kolodziej into custody, interviewed him for several hours, and administered a polygraph or stress test, but did not have sufficient probable cause to charge Kolodziej with any criminal wrongdoing in connection with Robby Silva's death. (*Id*. ¶ 44.) In addition, the Commander of the Task Force testified that there was no evidence that Defendant Cornell intentionally falsified the 2007 Riley polygraph report and that there was no evidence that Defendant Cornell intentionally covered-up information in connection with the Silva investigation. (*Id*. ¶¶ 41, 42.) The Task Force's investigation into Silva's death remains open. (*Id*. ¶ 45.)

On or about May 7, 2012, Plaintiff wrote a letter to Chief Hoglund asserting that Defendant Cornell mishandled the Silva investigation. (Defs.' Stmt. Facts ¶¶ 46, 47.) In that

4

letter, Plaintiff stated that she had long suspected that Defendant Cornell did not investigate her son's case properly. (*Id.* ¶ 48.) On December 17, 2014, Detective Haro filed a whistleblower lawsuit in Cook County Circuit Court against Defendants Cornell and Sisk, *Haro v. City of Blue Island*, 2014-L-013012 (Cir. Ct. Cook County, Law Division). (*Id.* ¶ 55.) In his lawsuit, which is still pending, Detective Haro alleges retaliation in relation to the Silva investigation, highlighting the investigation file's inconsistencies and Defendant Cornell's false polygraph report. (*Id.*)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted). If the non-moving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' summary judgment must be granted." *Blow v. Bijora, Inc.,* 855 F.3d 793, 797-98 (7th Cir. 2017) (citation omitted).

## ANALYSIS

I.  **Deprivation of the Right to Judicial Access – Count I**

In Count I of her Complaint, Plaintiff brings a constitutional claim based on the deprivation of her right to judicial access due to Defendant Cornell's alleged concealment of important facts about the criminal investigation into her son's death. The First and Fourteenth Amendments to the Constitution protect an individual's right to pursue legal redress for claims that have a reasonable basis in law and fact. *See Christopher v. Harbury,* 536 U.S. 403, 414-15, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002); *Rossi v. City of Chicago,* 790 F.3d 729, 734 (7th Cir. 2015); *Vasquez v. Hernandez,* 60 F.3d 325, 328 (7th Cir. 1995). "A corollary of this right is that efforts by state actors to impede an individual's access to courts or administrative agencies may provide the basis for a constitutional claim under 42 U.S.C. § 1983." *Vasquez,* 60 F.3d at 328; *see also Rossi,* 790 F.3d at 734 ("Interference with the right of court access by state agents who intentionally conceal the true facts about a crime may be actionable as a deprivation of constitutional rights under § 1983."). "[W]hen police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged." *Vasquez,* 60 F.3d at 328 (citing *Bell v. City of Milwaukee,* 746 F.2d 1205, 1261 (7th Cir. 1984)). "Relief for the denial of access to the courts is intended to remedy rights denied in a separate case due to the impediment," and the "'very point of recognizing any access claim is to provide effective vindication for a separate and distinct right to seek judicial relief for some wrong.'" *In re Maxy,* 674 F.3d 658, 661 (7th Cir. 2012) (citation omitted). To be actionable, a plaintiff must show that the alleged official misconduct caused "the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an

opportunity to seek some particular order of relief." *Christopher,* 536 U.S. at 414 (internal citations omitted).

Defendants first argue that Plaintiff's constitutional right to judicial access claim is untimely under the two-year limitations period for § 1983 claims. *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Lawsuits brought under § 1983 are governed by the statute of limitations for personal injury in the state where the injury occurred, which in Illinois is two years."). In particular, they assert that Plaintiff was aware of her constitutional injury by at least May 2012 when she wrote a letter to Chief Hoglund about Defendant Cornell's mishandling of the Silva investigation. *See Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) ("Section 1983 claims 'accrue when the plaintiff knows or should know that his or her constitutional rights have been violated.'") (citation omitted).

On the other hand, Plaintiff argues that she was unaware of Defendant Cornell's active and ongoing efforts to obscure facts about her son's death until Detective Haro filed his whistleblower lawsuit in the Cook County Circuit Court on December 17, 2014. Viewing the facts and all reasonable inferences in Plaintiff's favor, she asserts that until the December 2014 lawsuit, she was unaware that Defendant Cornell: (1) wrote a false polygraph report about Kolodziej's girlfriend Riley; (2) misinformed Chief Hoglund about the polygraph results; (3) took no corrective action once the polygraph examiners' actual report was in hand; and (4) concealed the Silva investigation report in his desk making it inaccessible to other detectives in the normal course of their work. Indeed, that Plaintiff thought Defendant Cornell mishandled the Silva investigation in 2012 is not the same as Defendant Cornell's alleged misconduct amounting to the concealment or obscuring of important facts in the Silva criminal investigation supporting Plaintiff's judicial access claim. Thus, construed in her favor, Plaintiff has presented sufficient

evidence to withstand Defendants' statute of limitations defense because she did not learn of the underlying facts supporting her constitutional deprivation until December 2014.  Also, there is evidence in the record – viewed in her favor – that Plaintiff was diligent in pursuing the facts surrounding the investigation into her son's death.  *See Liberty v. City of Chicago*, 860 F.3d 1017, 1019 (7th Cir. 2017) ("Equitable tolling applies when a plaintiff, despite the exercise of due diligence and through no fault of his own, cannot determine information essential to bringing a complaint.").

Turning to the merits of Plaintiff's judicial access claim, Plaintiff asserts that Defendant Cornell's misconduct in investigating her son's death resulted in her failing to commence a state law wrongful death action against Kolodziej (or more generally the hit-and-run driver) within the two-year limitations period under Illinois law.  *See* 735 ILCS 5/13-202; 740 ILCS 180/2.  To clarify, to show actual injury in support of her judicial access claim, Plaintiff must present evidence raising a triable issue of fact that Defendant Cornell's conduct frustrated or impeded her effort to pursue her wrongful death claim against the hit-and-run driver.  *See Christopher*, 536 U.S. at 414-15; *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996).  In their motions, Defendants argue that Defendant Cornell's alleged cover-up did not conceal the perpetrator's identity, and thus Defendant Cornell's conduct did not prevent Plaintiff from bringing her personal injury/wrongful death lawsuit against Kolodziej within the two-year limitations period.  Although Plaintiff knew of Kolodziej's possible involvement in the hit-and-run since May 2007, other evidence in the record indicates that Plaintiff may not have had enough information to bring a timely Illinois wrongful death claim that was "well grounded in fact" and not "interposed for any improper purpose[.]"  Ill. S.Ct.R. 137(a).  Plaintiff, for example, did not know that the March 2007 Riley polygraph examination was deemed inconclusive before the two-year

limitations period ran, and Chief Hoglund testified that the outcome of the Riley polygraph examination could have had a significant impact on the investigation. Instead, before the wrongful death limitations period ran in December 2007, Plaintiff merely knew that Kolodziej's relatives thought he was involved in the hit-and-run. Thus, unlike the facts in *Rossi* where the plaintiff unequivocally knew the perpetrators who attacked him, Plaintiff did not have independent, unequivocal knowledge of the hit-and-run driver's identity. *See Rossi*, 790 F.3d at 736 ("Rossi was not denied judicial access because he knew all of the relevant facts of his case and was free to pursue legal redress at all times.").

That being said, Plaintiff has not established that she is foreclosed from bringing her wrongful death lawsuit in a timely manner because the Illinois Wrongful Death Act provides that an action may be brought within one year after the final disposition of a criminal case if the defendant is charged with first degree murder, second degree murder, involuntary manslaughter, or reckless homicide. *See* 740 ILCS 180/2(e).[2] In other words, if Kolodziej or another individual is charged with Silva's death, Plaintiff may still bring her wrongful death claim within one year of the final criminal disposition, therefore, Defendant Cornell's alleged misconduct "did not so damage the plaintiff's litigation posture that it precluded adequate relief." *Rossi*, 790 F.3d at 736. Put differently, under the circumstances, Plaintiff has not established that she lost the opportunity to sue the driver involved in the hit-and-run death of her son. *See Christopher*, 536 U.S. at 416.

The Court recognizes that the hit-and-run death of Robby Silva was a tragedy, that the Task Force's investigation into Robby's death remains open, and that the police have yet to

---

[2] Illinois' Wrongful Death Act also provides that "an action against a defendant arising from a crime committed by the defendant in whose name an escrow account was established under the 'Criminal Victims' Escrow Account Act' shall be commenced within 2 years after the establishment of such account." 740 ILCS 180/2(d).

charge Kolodziej with criminal wrongdoing in connection with Robby's death. Under these circumstances, the Court must follow the Supreme Court's direction to carefully examine the predicate claim of Plaintiff's judicial access violation by requiring her to "identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id*. at 415. As the *Christopher* Court explained, "[t]here is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id.*; *see, e.g. Orange v. Burge*, No. 04 C 0168, 2005 WL 742641, at *10 (N.D. Ill. Mar. 30, 2005).[3]

In sum, Plaintiff may bring her wrongful death claim against the hit-and-run driver within one year after the final disposition of the criminal case if the driver is charged with first degree murder, second degree murder, involuntary manslaughter, or reckless homicide. As such, Plaintiff can vindicate her rights through a wrongful death tort action in the future despite Defendant Cornell's alleged misconduct. The Court therefore grants Defendants' summary judgment motion as to Count I of the Complaint.

## II.     Constitutional Conspiracy Claim – Count III

In Count III of her Complaint, Plaintiff brings a constitutional conspiracy claim under § 1983 against Defendant Cornell and Blue Island. Plaintiff, however, cannot bring a § 1983 conspiracy claim against the municipality of Blue Island without establishing liability under *Monell v. Dept. of Social Svcs.,* 436 U.S. 658 (1978). *See Collins v. Vill. of Woodridge,* 96 F. Supp. 2d 744, 755 (N.D. Ill. 2000). Here, Plaintiff has failed to argue that Blue Island is liable

---

[3] Because Plaintiff has failed to establish her judicial access claim, the Court need not address Defendant Cornell's qualified immunity defense. *See Olendzki v. Rossi,* 765 F.3d 742, 749 (7th Cir. 2014).

under *Monell*.[4] Also, as discussed immediately above, Plaintiff has failed to establish her underlying constitutional claim, and thus she cannot maintain her conspiracy claim. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011) ("absence of any underlying violation of Plaintiff's rights precludes the possibility of Plaintiff succeeding on a conspiracy claim"); *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) ("conspiracy is not an independent basis of liability in § 1983 actions"). The Court therefore grants Defendants' summary judgment motions as to Count III of the Complaint.

## III. Intentional Infliction of Emotional Distress – Count IV

Next, in Count IV of her Complaint, Plaintiff alleges an intentional infliction of emotional distress ("IIED") claim.[5] "Under Illinois law, a plaintiff may recover damages for intentional infliction of emotional distress only if she establishes that (1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel Corp.,* 869 F.3d 557, 566 (7th Cir. 2017). "[T]he Illinois Supreme Court has held that 'to qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized society.'" *Id*. (quoting *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278 Ill.Dec. 228, 798 N.E.2d 75, 80 (Ill. 2003)). In short, "IIED requires more than "mere insults, indignities, threats, annoyances, petty

---

[4] Plaintiff does not address Defendants' arguments in relation to her claim brought pursuant to *Monell v. Dept. of Social Svcs.*, 436 U.S. 658 (1978), therefore, Plaintiff has waived this claim as alleged in Count II. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016).

[5] Because Plaintiff did not discover the extent of Defendant Cornell's alleged misconduct until Detective Haro filed his state court complaint in December 2014, her Illinois intentional infliction of emotional distress claim based on this misconduct is timely under the one-year limitations period pursuant to 745 ILCS 10/8-101.

11

oppressions, or other trivialities." *Boston v. U.S. Steel Corp.,* 816 F.3d 455, 467 (7th Cir. 2016) (citation omitted). "Under Illinois law, one factor that influences the extreme and outrageous nature of the conduct is the degree of power or authority that the actor has over the plaintiff." *Id*.

Under the first element of an IIED claim and in the context of police abuse of power cases, the Illinois Appellate Court has concluded that police misconduct was extreme and outrageous where "plaintiffs alleged that defendants fabricated and manufactured evidence and concealed exculpatory evidence for the purpose of falsely and maliciously detaining, arresting, and charging plaintiffs, knowing that such charges lacked probable cause." *Bianchi v. McQueen*, 58 N.E.3d 680, 700 (2d Dist. 2016); *see also Chatman v. City of Chicago,* No. 14 C 2945, 2016 WL 4734361, at *5 (N.D. Ill. Sept. 12, 2016) (defendants' conduct in "knowingly withholding exculpatory information, even though they were aware that there was a high likelihood that disclosure of the information would impact [plaintiff's] trial and appeal" amounted to extreme and outrageous conduct); *Gonzalez v. City of Waukegan,* 220 F. Supp. 3d 876, 888 (N.D. Ill. 2016) (police officers conducting unduly suggestive lineup, fabricating evidence, and coercing confession amounts to extreme and outrageous conduct).

Although this is a close call, construing the evidence and all reasonable inferences in Plaintiff's favor, a reasonable jury could believe that Defendant Cornell's misconduct was an abuse of police power as highlighted in *Bianchi*, *Gonzalez*, and *Chatman*. In particular, evidence in the record viewed in Plaintiff's favor includes that Defendant Cornell falsified the Riley polygraph report, misinformed Chief Hoglund about the Riley report, did not take any corrective action about the report after Williams concluded that the Riley polygraph examination was inconclusive, and that he buried the Silva investigation file in his desk drawer to cover up any alleged misconduct. Additionally, Plaintiff points to evidence that Defendant Cornell told her

Robbie's death was an accident and that she needed to "move on" – which raises a reasonable inference that Defendant Cornell wanted her to drop her efforts in seeking answers to her son's death. That Defendant Cornell had control over the situation as a police officer lends further support to Plaintiff's contention that his conduct was extreme and outrageous. As such, Plaintiff has presented sufficient evidence that Defendant Cornell made more than a few mistakes as Defendants argue.

The Court further notes that Defendants have not met their initial burden of "show[ing] that there is no genuine dispute as to any material fact" and that they are entitled to "judgment as a matter of law" as to all three elements of Plaintiff's IIED claim because "Federal Rule of Civil Procedure 56 imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013); Fed.R.Civ.P. 56(a). This initial burden can be met by showing "there is an absence of evidence to support the nonmoving party's case." *Id*. (quoting *Celotex*, 477 U.S. at 325); *see also Lady Di's, Inc. v. Enhanced Servs. Billing, Inc.*, 654 F.3d 728, 732 (7th Cir. 2011). In their legal memoranda, Defendants do not challenge the factual support of the second and third elements of Plaintiff's IIED claims, but merely state that "[w]hile Plaintiff's claim fails all three prongs [of an IIED claim], we focus on prongs [sic] one here." (R. 74, Cornell Brief, at 13.) As such, Defendants did not meet their threshold burden under Rule 56(a).

Defendants also contend that the Illinois Tort Immunity Act shields Defendant Cornell against liability based on 745 ILCS 10/2-201, which "immunizes governmental entities from liability for injuries caused by the exercise of discretionary authority." *Doe v. Vill. of Arlington Heights,* 782 F.3d 911, 922 (7th Cir. 2015). As the Supreme Court of Illinois has explained "our cases have made clear that there is a distinction between situations involving the making of a

13

policy choice and the exercise of discretion. Municipal defendants are required to establish both of these elements in order to invoke immunity under section 2–201." *Van Meter v. Darien Park Dist.,* 207 Ill. 2d 359, 379 (Ill. 2003); *see also Harinek v. 161 N. Clark St. Ltd. P'ship,* 181 Ill. 2d 335, 341 (1998) ("the act or omission must be both a determination of policy and an exercise of discretion."). Simply put, "in order to receive immunity under section 2–201, the municipal official must have been making a 'policy decision' when committing the alleged [] act." *Valentino v. Vill. of S. Chicago Heights,* 575 F.3d 664, 679 (7th Cir. 2009). Moreover, "decisions requiring a governmental entity to balance competing interests and to make a judgment call as to what solution will best serve those interests are 'policy decisions' within the meaning of section 2–201." *Van Meter*, 207 Ill. 2d at 379.

Viewed in Plaintiff's favor, evidence in the record indicates that Defendant Cornell falsified a polygraph report, did not correct the report, misinformed Chief Hoglund about the report, and hid the Silva investigation file. Here, Defendants do not adequately explain how Defendant Cornell was making "policy decisions" in relation to these actions, and it is Defendants' burden to establish this affirmative defense. *See Harrison v. Hardin Cnty. Cmty. Unit Sch. Dist. No. 1,* 197 Ill. 2d 466, 472 (Ill. 2001) (§ 2-201 is "premised upon the idea that such officials should be allowed to exercise their judgment in rendering decisions without fear that a good-faith mistake might subject them to liability"); *Van Meter*, 207 Ill. 2d at 379 (defendant must establish affirmative defense under § 2-201). In short, the Court would be hard pressed to conclude that Defendant Cornell's decision to falsify a police report and hide an investigation file amounts to a policy decision as defined by the Illinois courts. *See Valentino,* 575 F.3d at 659-60; *Van Meter*, 207 Ill. 2d at 379.

The Court therefore denies Defendants' summary judgment motions as to Plaintiff's IIED claim alleged in Count IV of her Complaint.

## IV. State Law Conspiracy to Inflict Severe Emotional Distress – Count V

In Count V of her Complaint, Plaintiff brings a state law conspiracy claim based on her IIED claim. "Under Illinois tort law, a civil conspiracy requires '(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.'" *Turner v. Hirschbach Motor Lines,* 854 F.3d 926, 930 (7th Cir. 2017) (citation omitted); *see also Adcock v. Brakegate, Ltd.,* 164 Ill. 2d 54, 63, 206 Ill.Dec. 636, 645 N.E.2d 888 (Ill. 1994) ("A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort.").

Plaintiff's civil conspiracy claim is duplicative of her IIED claim, and thus is not actionable as a separate claim. *See Thermodyne Food Serv. Prod., Inc. v. McDonald's Corp.*, 940 F. Supp. 1300, 1310 (N.D. Ill. 1996) ("a conspiracy claim alleging a tort as the underlying wrongful act is duplicative where the underlying tort has been pled"). More specifically, "because a successful conspiracy claim enables a plaintiff to hold co-conspirators jointly liable for actions by other members of the conspiracy, a conspiracy claim is only actionable if it is based on new facts or seeks to extend liability for the underlying tort to new defendants." *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1159 (N.D. Ill. 2016) (internal citations omitted). Because Plaintiff fails to set forth facts not already presented in the underlying IIED claim nor seek to extend liability to any additional individual defendants, her state law conspiracy claim is not actionable. *See Real Colors, Inc. v. Patel*, 974 F. Supp. 645, 651 (N.D.

15

Ill. 1997) ("Conspiracy alleging a tort as the underlying wrongful act is actionable, as long as it includes additional defendants or new facts not already pled in the underlying tort").  The Court grants Defendants' summary judgment motions in this respect.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' summary judgment motions.

**Dated:** March 5, 2018

                              **ENTERED**

                              _____
                              **AMY J. ST. EVE**
                              **United States District Court Judge**